UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR GREER,

    **Plaintiff,**      CIVIL ACTION NO. 05-CV-71629-DT

  vs.

             DISTRICT JUDGE ARTHUR J. TARNOW

NICK LUDWICK,       MAGISTRATE JUDGE MONA K. MAJZOUB
et. al,

    **Defendants.**
_____/

### REPORT AND RECOMMENDATION

**RECOMMENDATION:** Plaintiff's Motion to Facilitate Access to the Courts and Motion to Enforce

Defendants to Adhere to Consent Decree should be **DENIED**.

*** 

   Plaintiff was allowed to proceed *in forma pauperis* and filed the instant complaint on April 26,

2005 pursuant to 42 U.S.C. § 1983.  The case has been referred to the undersigned for all pretrial

proceedings.  Before the Court is Plaintiff Motion to Facilitate Access to the Courts, filed along with

his complaint, and Plaintiff's Motion to Enforce Defendants To Adhere To Consent Decree[1] filed on

June 29, 2005.  In his motions for injunctive relief, Plaintiff alleges that certain Defendants employed

by the Michigan Department of Corrections (MDOC) are violating his constitutional right to access the

courts.  Specifically, he claims that "he has not had access to the defendants' main law library since

March 2003, and can not possibly litigate the instant case without necessary tools required to litigate."

(Plaintiff's Motion to Facilitate, pg. 2, ¶ 3).  Plaintiff also claims that certain MDOC employees have

---

[1] In his Motion to Enforce Defendants to Adhere to Consent Decree, Plaintiff seeks an "Order to enforce
the defendants to adhere to the Cain consent decree as outlined in plaintiff's Motion to Facilitate Access to the Court
. . ."  However, in his Motion to Facilitate Access to the Courts, Plaintiff fails to identify a specific consent decree or
explain how MDOC is violating such decree.

failed to respond to his grievances and placed him on modified access status in order "to impede

plaintiff's access to the courts." *Id.* ¶¶ 8-9.  Plaintiff now seeks an order directing MDOC officials "[t]o

temporarily transfer plaintiff to facility [sic] to enable plaintiff to conduct adequate, effective, an

meaningful legal research." *Id.*

## I.  APPLICABLE LAW

Federal Rule of Civil Procedure 65(b) provides guidelines for issuance of temporary restraining

orders:

> A temporary restraining order may be granted without written or oral
> notice to the adverse party or that party's attorney only if (1) it clearly
> appears from specific facts shown by affidavit or by the verified
> complaint that immediate and irreparable injury, loss, or damage will
> result to the applicant before the adverse party or that party's attorney
> can be heard in opposition, and (2) the applicant's attorney certifies to
> the court in writing the efforts, if any, which have been made to give the
> notice and the reasons supporting the claim that notice should not be
> required.

A temporary restraining order and preliminary injunction require the same analysis.  *Brown v. City of

Detroit*, 715 F. Supp. 832, 834 (E.D. Mich. 1989)(citing *Mason County Medical Association v. Knebel*, 563 F.2d

256, 261 (6th Cir. 1977)).  The decision to grant or deny injunctive relief is within the sound discretion

of the district court. *See Marchwinski v. Howard*, 309 F.3d 330, 333 (6th Cir. 2002); *Kallstrom v. City of

Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998)(internal citations omitted).

When determining whether to issue injunctive relief, a district court must consider four factors:

(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would

suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause

substantial harm to others; and (4) whether the public interest would be served by issuance of the

injunction. *American Civil Liberties Union of Ky. v. McCreary County, Ky.*, 354 F.3d 438, 445 (6th Cir. 2003)

(quoting *Rock and Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998)); *see

*also, Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003). A plaintiff bears a heavy burden of demonstrating his entitlement to injunctive relief. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)("A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."); *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)("[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion.").

## II. DISCUSSION AND ANALYSIS

### 1. Access to Courts

#### a. Restricted Access to Prison Law Library

Prisoners have a fundamental right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). "The right springs from the Due Process Clauses of the Fifth and Fourteenth Amendments and the right of petition found in the First Amendment," *Hodge v. Prince*, 730 F. Supp. 747, 751 (N.D. Tex. 1990), as well as from the Privileges and Immunities Clause of Article IV. *See Chambers v. Baltimore and Ohio R.R.,* 207 U.S. 142, 148 (1907). A prisoner's access to the courts must be adequate, effective and meaningful. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984); *Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir. 1983). A prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 349, 351-53 (1996). To meet this requirement, a plaintiff must show that the actions of the prison officials "hindered the prisoner's efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996); *accord Lewis*, 518 U.S. at 353; *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996); *Stewart v. Block*, 938 F. Supp. 582, 586 (C.D. Cal. 1996)(plaintiff must show "a specific instance in which he was actually denied access to the courts.")(internal quotation omitted).

Further, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines," and thus the right is limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355. Under *Lewis*, dismissal is appropriate where a prisoner fails to allege a specific, litigation-related detriment resulting from the prison official's conduct. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Here, Plaintiff fails to identify any specific detriment resulting from MDOC's law library restrictions. Instead, Plaintiff vaguely alleges that three of his previous complaints were dismissed "due to denied access to the defendants main law library." (Plaintiff's Motion, pg. 2, ¶ 4). Such vague and conclusory allegations do not demonstrate a specific litigation-related detriment sufficient to meet the standing requirements of *Lewis*. *See also Johnson v. Perry*, 1997 U.S. App. LEXIS 6154 (6th Cir. 1997)(unpublished)("The right of access guarantees access to the courts and not the prison law library. An inmate who claims his access to the courts was denied merely because he was denied access to the prison law library fails to state a claim absent any showing of prejudice to his litigation.").

Furthermore, the Sixth Circuit pointed out in *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985) that:

> Restricted access to the law library is not per se denial of access to the courts. *United States v. Evans*, 542 F.2d 805 (10th Cir. 1976). Nor do either *Younger v. Gilmore*, 404 U.S. 15, 92 (1971) or *Johnson v. Avery*, 393 U.S. 483 (1969) equate access to the courts with the adequacy of a prison law library. The prison library is but one factor in the totality of all factors bearing on the inmates' access to the courts which should be considered. *Hampton v. Schauer*, 361 F. Supp. 641 (D. Colo. 1973).

*Walker*, 771 F.2d at 932. Therefore, the Court rejects Plaintiff's assertion that restricted access to the prison law library amounts to a *per se* violation of his right to access the courts. To the extent that

Plaintiff suggests that he has been unable to challenge the conditions of his confinement, the Court finds such claims suspect. Significantly, Plaintiff has indicated that he has filed multiple lawsuits including the instant complaint. Plaintiff has also filed numerous motions including the instant motion for injunctive relief and which motions have contained accurate legal citations. These facts make it difficult, if not impossible, for Plaintiff to demonstrate a substantial likelihood of success on the merits of his claim that he has been denied access to the courts.

### b. MDOC's Modified Access Status and Ability to File Grievances

Next, Plaintiff alleges that certain Defendants "declined to enter grievances against several defendants (in)to the Department's Database [and] . . . assigned plaintiff to 'modified access status . . . as means to impede plaintiff's access to the courts." (Plaintiff's Motion, pg. 3, ¶¶ 8-9). Under MDOC's policy of modified access status, an inmate must first obtain permission from a grievance coordinator before he is allowed to file an administrative grievance. Generally, inmates are placed on modified access status only after they have filed numerous duplicative, non-meritorious, or frivolous grievances. Plaintiff suggests that MDOC's modified access status denies him access to the courts in violation of the First Amendment. For the following reasons, this Court concludes that Plaintiff cannot establish a substantial likelihood of success on the merits of such claim.

In evaluating prison regulations that allegedly infringe on a prisoner's constitutional rights, the regulations will be upheld if it is reasonably related to legitimate penological interests. *Turner v. Safely*, 482 U.S. 78, 89 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). Under this test, prison officials will be afforded great latitude in establishing policies that best balance the penological interests of the institution and the constitutional rights of inmates. *Turner*, 482 U.S. at 89. In determining whether the prison policy is reasonably related to some legitimate penological interest, courts have enumerated the following factors: (1) whether there is a valid and rational connection between the prison policy and the

legitimate governmental interest asserted to justify it; (2) the existence of alternative means for inmates to exercise their constitutional rights; (3) the impact that accommodation of these constitutional rights may have on other guards and inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives as evidence of the reasonableness of the regulation. *See Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

In the instant case, Plaintiff has failed to explain how MDOC's policy of modified access status fails to satisfy the aforementioned rational basis test. The modified access policy has a valid and rational basis in that it is designed to prevent prisoner abuse in filing multiple non-meritorious grievances. Without the policy, prisoners would be able to file duplicative and frivolous grievances that require adjudication on the merits at all three steps of the grievance procedure. This would result in many wasted hours of administrative tracking and unnecessary decision making. Finally, the policy does not create a jurisdictional bar to filing a § 1983 suit since a prisoner who has been denied permission to file a grievance is deemed to have exhausted under the PLRA. Thus, there appears to be no real harm other than increased scrutiny and accountability for abusive prisoner practices. Accordingly, this Court concludes that Plaintiff has failed to establish a substantial likelihood of success on the merits of his claim that MDOC's policy of modified access status is unconstitutional.

For the foregoing reasons, the Court recommends that Plaintiff's Motion to Facilitate Access to the Courts be **DENIED**. Plaintiff's Motion to Enforce Defendants to Adhere to Consent Decree should also be **DENIED** as Plaintiff has failed to identify a specific consent decree or a violation thereof.

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §

636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932

F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which

raise some issues but fail to raise others with specificity, will not preserve all the objections a party might

have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401

(6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant

to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must

recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten

days after service of an objection, the opposing party must file a concise response proportionate to the

objections in length and complexity.  The response must specifically address each issue raised in the

objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2,"

etc.



Dated: August 30, 2005                                      s/ Mona K. Majzoub
                                                            MONA K. MAJZOUB
                                                            UNITED STATES MAGISTRATE JUDGE




## Proof of Service

I hereby certify that a copy of this Report and Recommendation was served upon Arthur Greeer
and Counsel of Record on this date.

Dated: August 30, 2005                                      s/ Lisa C. Bartlett
                                                            Courtroom Deputy